Amy Semmel, State Bar No. 116204
Paul M. Kelley, State Bar No. 87505
**KELLEY•SEMMEL, LLP**
5757 Wilshire Blvd., Penthouse 5
Los Angeles, California 90036
Phone: 323-592-3450; Fax: 323-383-9910
Email: asemmel@kelleysemmel.com

Attorneys for Plaintiff Donald Mark Ryan

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – CENTRAL DIVISION**

| | |
|---|---|
| Donald Mark Ryan, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JSL Technologies, Inc., a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>Defendant. | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>**1) RETALIATION/WRONGFUL TERMINATION IN VIOLATION OF 31 USC §3730(h) (FALSE CLAIMS ACT);**<br><br>**2) RETALIATION/WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA LABOR CODE §6310**<br><br>**3) RETALIATION/WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA LABOR CODE §1102.5; and**<br><br>**4) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff alleges as follows:

**PREMILIMARY STATEMENT**

*"There is no kind of dishonesty into which otherwise good people more easily and frequently fall than that of defrauding the government."*

Benjamin Franklin

Defendant JSL technologies, Inc. ("JSL" or "Defendant" or "Contractor") fired Plaintiff Donald Mark Ryan because he reported both internally and to the United States Government that JSL was not in compliance with the United States Government's contractual requirements for the ocean crafts operated by JSL for military exercises at the Far East Detachment White Beach Naval Facility in Okinawa, Japan. Mr. Ryan reported these concerns solely to attempt to remedy them. Plaintiff brings this action against Defendant for retaliation and wrongful termination in violation of the False Claims Act, 31 USC §3730(h), California Labor Code §6310 and 1102.5, as well as under common law.

**PARTIES**

1. Plaintiff Donald Mark Ryan ("Plaintiff" or "Mr. Ryan") is an individual with long experience and training as a seafaring ship's Captain and/or Officer in Charge of Navigational Watch. At the time he accepted an offer of employment from Defendant, Mr. Ryan was living in Alaska. Mr. Ryan is fluent in Japanese and well versed in Japanese culture through years of University in Japan and was excited to live and work there once again.

2. Based on information and belief, Plaintiff alleges that Defendant JSL Technologies, Inc. is a corporation with its principal place of business in Oxnard, California.

3. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by

such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Defendants claims an interest in the subject matter of this controversy, or is responsible in some manner for the damages hereinafter alleged by the Plaintiff.

4. Except as noted otherwise, wherever in this complaint reference is made to any act of "Defendant," such allegations shall be deemed to mean all named Defendants and DOES 1 through 20, or their officers, agents, managers, representatives and employees.  The actions alleged against persons in this complaint were authorized by Defendants and taken while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties with Defendants.

5. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each Defendants was the agent, servant or employee of each of the other Defendants, and in doing the things hereinafter alleged, was acting in the course and scope of its authority as such agent, servant or employee, and with the permission and consent of each of the other Defendants. Plaintiff is informed and believes and thereon alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each of the Defendants are legally attributable to the other Defendants.

## JURISDICTION

6. Count I is a civil action by Plaintiff Ryan under the "whistleblower protection" provision of the Federal False Claims Act, 31 U.S.C. §3230(h).  This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 3730 (h) and 3732 (a).

7. Count II is a civil action by Plaintiff Ryan under California Labor Code §6310 which prohibits retaliation against employees who report unsafe working

conditions. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. §1367 and 31 U.S.C. §3732.

8. Count III is a civil action by Plaintiff Ryan under the "whistleblower protection" provision of the California Labor Code section 1102.5. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. §1367 and 31 U.S.C. §3732.

9. Count IV is a civil action for wrongful termination in violation of public policy under California common law. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. §1367 and 31 U.S.C. §3732.

## VENUE

10. This is the proper venue for this action under 28 U.S.C. §3730(a) pursuant to the written employment agreement between Defendant and Mr. Ryan, which states that the relationship between the parties is to be governed by California law and any action in connection therewith is to be brought in Ventura County or other appropriate court in California.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11. Plaintiff is informed and believes and thereon alleges that the U.S. government awarded Defendant a contract for Maintenance and Operation ("M&O") of a Range Support Craft ("RSC") and other craft for the United States Government Pacific Missile Range ("PMRF") Far East Detachment White Beach Naval Facility, Okinawa, Japan. The contract between the United States and JSL is numbered N62649-15-P-0802 ("RSC Contract" or "Contract"). Plaintiff is informed and believes and thereon alleges that the effective date of the RSC Contract was September 28, 2015. The function of the contract is to maintain and operate certain vessels and associated equipment for ocean readiness in accordance with the Performance Work Statements set forth in the RSC Contract. Plaintiff is informed and believes and thereon alleges that on or about September 30, 2015, JSL conducted a voyage to the

Itoman Shipyard for repairs.

12. On or about December 13, 2015, Defendant hired Mr. Ryan to serve as Master Boat Captain Open Ocean to work on the Maintenance and Operation of a Range Support Craft and other craft per the RSC Contract. Mr. Ryan reported to the White Beach Facility on December 31, 2015. Defendant housed Mr. Ryan at the White Beach Naval Facility in Department of Defense Lodging

13. The objective of the RSC Contract is for the contractor to provide all personnel, equipment, tools, supervision and other items and services necessary to perform scheduled operations, including ensuring that the vessels and associated equipment are ocean ready for missions to include Search and Rescue, for which there may be little or no advance notice. The RSC Contract provides that "the contractor shall operate one RSC and associated equipment in accordance with all equipment technical orders, instructions, Performance Work Statement ("PWS") and appendices, and maritime regulations to ensure maximum operational readiness." RSC Contract §3.2. The Contract also provides that the "contractor shall be responsible for RSC operations under the vessel Master's determination that operations are safe when applying the principles of a prudent mariner." Id.

14. Plaintiff initially reported to Program Manager ("PM") Jim Savage whom Plaintiff is informed and believes and thereon alleges works primarily from Ventura County, California as the Executive Vice President for Asia Pacific Operations. Plaintiff also reported to Program Manager Curtis Naki whom Plaintiff is informed and believes and thereon alleges works primarily from Ventura County, California, as well as the Okinawa on-site manager, David Klaproth.

15. Upon his arrival at the White Beach Naval Facility, Mr. Ryan soon found that the vessels for which he was to be responsible under the RSC Contract were not being maintained and/or operated in accordance with the Contract. As explained more fully below, these were not merely technical violations, but rather material violations

that had the potential to put, or were putting the safety of the environment, crew and others at risk, as well as possibly the objectives of the PMRF mission itself.

16. On or about January 5, 2016, Mr. Ryan emailed his supervisor, Mr. Savage, regarding the condition of the RSC vessel for which Mr. Ryan was to be responsible. Mr. Ryan noted that there were no records available regarding previous maintenance of the vessels, no company marine operations manual, no inspection logs and other documents required by the RSC Contract to safely operate an oceangoing vessel. Mr. Ryan noted that the vessel as received from the government simultaneously had a port engine overheating exhaust problem, an inoperable bow thruster, a broken autopilot system, nearly inoperable communications system between the wheelhouse and the engine room, questionable backup steering and a fuse or link which disabled the rudder, and other problems. Mr. Ryan expressed appreciation that some of these issues were apparently being addressed, but cautioned that he would give "deep consideration whether I leave the dock or not knowing the rudder is susceptible to tripping off-line" given the expected deployment on January 19, 2016. Mr. Ryan was concerned both about the safety of his crew and compliance with the RSC Contract.

17. Over the next couple of weeks, Mr. Ryan sent both his immediate supervisor and Joseph Black, whom Plaintiff is informed and believes and thereon alleges is the CEO and/or President of Defendant, several emails reporting safety issues, noncompliance with RSC Contract requirements, as well as various labor concerns. Mr. Ryan voiced similar concerns by telephone and in person. These included:

a. Violation of RSC Contract §3.2.2. This section requires that when the RSC is at sea, the contractor shall crew it, at a minimum, with (i) a USCG Ocean Licensed Master for a 200-ton vessel; (ii) USCG Ocean Licensed Designated Duty Engineer Limited to 4000 HP or Japanese equivalent; and (iii) a USCG Ocean Licensed Able Seamen or

Japanese equivalent. Plaintiff is informed and believes and thereon alleges that Defendant deployed the vessel to sea without meeting such requirements.

b. Violation of RSC Contract §3.2.3. This section requires when the RSC is scheduled to be at sea for more than 12 hours, the contractor shall also crew it, at a minimum with (i) USCG Ocean Licensed First Mate for a 200-ton vessel or Japanese equivalent; (ii) USCG Ocean Licensed Oiler or Japanese equivalent; (iii) and a USCG Ocean Licensed Able Seamen or Japanese equivalent in addition to the Able Seaman required by §3.2.2. Plaintiff is informed and believes and thereon alleges that Defendant deployed the vessel on voyages scheduled to be longer than 12 hours in duration without meeting such requirements; that Defendant knowingly designated a US crewman who did not hold a USCG Ocean Licensed First Mate for a 200-ton vessel or Japanese equivalent to fill the Mate position. Mr. Ryan considered this contract violation particularly concerning given the vessel characteristics and mission requirements including the small size of the RSC, and a draft of only 7 feet.

c. Violation of RSC Contract §3.2.11. The contractor is required to maintain Emergency Position Indicating Radio Beacon (‘EPIRB”) Registrations, and, if there is not an operational and registered EPIRB, then the RSC is to be placed out of commission until one is obtained. Plaintiff is informed and believes and alleges thereon that this beacon was not registered, such that in the event of an emergency the registered user could not be contacted to verify need for, or assist in the rescue effort.

d. Violation of RSC Contract §3.3 RSC Maintenance. This section

requires the Contractor to perform pre- and post-operational checks per the inspection and maintenance checklist set forth in Exhibits H and I to the contract and document any discrepancies, which are to be delivered to the Contracting Officer's Representative ("COR"). Plaintiff is informed and believes and thereon alleges that on or about January 15, 2016 and other later dates, the RSC vessel went to sea without appropriate reporting, maintenance and repairs made, including:

i. *Non-follow Up ("NFU") Steering System Inoperable:* Exhibit H required that the Steering System be checked and repaired prior to operation. The NFU function was not repaired.

ii. *Liferaft Out of Order*: Exhibit H required that all safety equipment be intact and in good working order. The cradle and rafts were mismatched; the painter lifeline, the integrity of which is essential for auto-deployment in case of sinking, was in obviously poor condition.

iii. *Autopilot Out of Order:* Exhibit H required that all onboard electronic equipment be checked for proper operation. The autopilot system was inoperable.

iv. *Satellite Telephone Out of Order:* Plaintiff is informed and believes and thereon alleges that the satellite phone, used in case of emergency, was inoperable for several months.

v. *Aft Deck Sound Powered Telephone Out of Order:* this telephone is intended to be used in times of emergency and electrical failure. The Aft Deck Sound-Powered Telephone was inoperable for several months.

vi. *Navigation System updates long overdue:* Plaintiff is informed

and believes and thereon alleges thereon that the helm station navigation system, NavNET, important for safe navigation, was not updated at a normal intervals; plaintiff is informed and believes and thereon alleges thereon that the installed version dated on or around 2007.

vii. *NavTEX Radar:* Plaintiff is informed and believes and thereon alleges that the radar system was inoperable for several months.

viii. *EPIRB Hydrostatic Release Expired:* Plaintiff is informed and believes and thereon alleges that the expiration date of the hydrostatic release part enabling the larger EPIRB unit to float free which is required for proper function in case of sinking, could not be verified.

ix. *Watertight Integrity*. Emergency escape hatches on the aft deck were not watertight. Plaintiff is informed and believes and thereon alleges poor watertight integrity at the deck level contributes to daily slip hazard in the engine room, and would accelerate downflooding thus accelerating sinking hazard under emergency conditions.

e. <u>Violation of RSC Contract §3.2.10</u>. This section stipulates that the contractor shall maintain certifications of all fire suppression systems. Plaintiff is informed and believes and thereon alleges that in violation of this requirement certification was not carried onboard.

f. <u>Violation of RSC Contract §3.2.16 and 4.4.1.</u> These sections require the contractor to be knowledgeable of and comply with all Naval Port Facility White Beach berthing requirements and restrictions and comply with Japanese environmental laws and regulations. Plaintiff is informed and believes and thereon alleges that crew were not provided

with applicable Japan Environmental Governing Standards information or guidance with which to become familiar, and that JSL acted in violation of berthing requirements and Japanese law/regulations by disposing untreated sewage as a policy and practice by merely overboarding it to the sea.

g. Violation of RSC Contract §3.3.10. This section requires the RSC Contractor to maintain a Caterpillar ET Laptop with current license for monitoring and troubleshooting main engines and generators. Plaintiff is informed and believes and thereon alleges that in violation of this requirement, no such laptop was supplied during his tenure and for some time afterward.

h. Violation of RSC Contract §4.2.2. This section requires the contractor to perform work in a safe manner as required by OSHA Standard 2206, General Industry, 29 CFR 1910). Plaintiff is informed and believes and thereon alleges Defendant, as a policy and practice, utilized an elevated area above their office in Bldg. 1162 at White Beach Naval Facility for storage. The space had no stairs and no railings, and was utilized and accessed in a manner which was unauthorized, unsafe and in violation of the Standard and this contractual provision.

i. Violation of RSC Contract §4.1. This section requires the contractor "to control the quality of service delivery and offer to the Government for acceptance only services which conform to the contract requirements." Plaintiff is informed and believes and thereon alleges that Defendant violated this provision by repeatedly offering and requesting payment therefor services which did not conform to the Contract in material ways.

18. Plaintiff also reported to his supervisor that Defendant's refusal to provide food to the crew violated the Maritime Labor Convention, which requires each Member of the Geneva Convention to adopt laws and regulations to provide minimum standards for the quantity and quality of food and drinking water for seafarers on ships that fly its flag, as well as 46 U.S.C. §10303, which provides: "a seaman shall be served at least 3 meals a day that total at least 3100 calories, including adequate water and adequate protein, vitamins and minerals…." Plaintiff raised this issue both for the benefit of the crew and because Defendant's requirement that the seaman purchase food and be reimbursed later was causing morale problems. He further reported the icemaker and water maker unit as unsanitary and potable water tanks as untested for human consumption.

19. Section 4.1 of the RSC Contract requires Defendant to "control the quality of service delivery and offer to the Government for acceptance only services which conform to contract requirements." In addition, Plaintiff is informed and believes and thereon alleges that Defendant was required to certify that the services for which invoices were submitted conform to the requirements of the RSC Contract. Plaintiff is informed and believes and thereon alleges that Defendant both expressly and impliedly certified to the Government that the services for which invoices were issued complied with requirements of the RSC Contract. Plaintiff is informed and believes and thereon alleges that such certifications were false for the reasons set forth above, among others.

20. On or about January 16, 2016 and on several other occasions, Mr. Ryan emailed to Mr. Savage, as well as to Mr. Conway, completed copies of contractually required RSC Pre- and Post-Operational Checklists which described the many deficiencies and discrepancies from the RSC Contract requirements.

21. On or about January 17, 2016, the President of JSL, Joseph Black, called Mr. Ryan and "chewed him out" for sending the various emails detailing the violations of the RSC Contract, the safety violations and the other matters which Mr. Ryan

raised. Mr. Black told Mr. Ryan to "tone down the emails."

22. On January 19, 2016 and on several other occasions prior to Defendant terminating Mr. Ryan on February 9, 2016, Mr. Ryan shared several of his concerns with the Government COR, Ralph Conway, and PMRF Marine Systems Manager, Bruce Newport, both in writing and verbally. Mr. Ryan addressed, among other things, about the lack of required licenses necessary to deploy the vessels in accordance with the requirements of the RSC Contract and prudent marine principles as well as the lack of registration for the EPIRB.

23. On January 28, 2016, in an email on which he copied Mr. Savage and Mr. Naki, Mr. Ryan reported to the COR that JSL's acting engineer, Mr. Arakaki, did not hold the proper Japanese equivalent certificate to qualify for the position he was to fill.

24. On or about January 28, 2016, Mr. Ryan notified Mr. Savage, Mr. Naki, and COR Ralph Conway, via email that he believed the certifications of acting RSC engineer Mr. Arakaki did not meet the standard required by the RSC contract.

25. On or about January 28, 2016, Mr. Savage called Mr. Ryan and angrily expressed his displeasure with the fact that Mr. Ryan had informed the COR of various contract deficiencies, including the lack of a properly licensed seamen. Mr. Savage instructed Mr. Ryan to contact the previous engineer to replace the acting engineer in an attempt to ready the vessel for her next voyage.

26. Although not scheduled to arrive in Japan until February 19, 2016, Mr. Naki suddenly arrived in Okinawa on February 3, 2016. When meeting with Mr. Ryan, Mr. Naki stated that the purpose of his unplanned visit was to stop the flow of emails from Mr. Ryan to the government. During the course of the conversation, Mr. Ryan continued to point out many of the contractual and regulatory infractions, stating that collusion to misrepresent material facts to the COR or otherwise defraud the government in an effort to maintain the appearance of the JSL meeting the contract was not in his, Mr. Ryan's, job description.

27. On February 4, 2016, Mr. Ryan emailed Mr. Naki a list of some 24 items as to which he could not verify compliance with the RSC Contract. Mr. Ryan stated, "I would like to inform you that I cannot verify or compliance [sic] with the following contract line items contained in… [The RSC Contract]. I feel it is important for JSL to remain in compliance with the US Gov't contract in order to remain in good favor and keep working." Mr. Ryan also apologized in advance if he was mistaken as to any item listed therein.

28. On February 9, 2016, Mr. Naki terminated Mr. Ryan's employment. Mr. Naki, on behalf of Defendant, confiscated the Status of Forces Agreement ("SOFA") ID and base pass of Mr. Ryan and falsely represented that Mr. Ryan had resigned in a prior email to Joe Black. Shortly thereafter, Mr. Naki advised Mr. Ryan that his choices were to be either escorted from the premises of White Beach Naval Facility by a JSL employee or by Military Police escort. Mr. Ryan chose the former. Without his SOFA-status, without access to his personal vehicle located on base, kicked out of his housing, and without any financial support from Defendant, Mr. Ryan was effectively stranded in Japan without support from Defendant.

**FIRST COUNT**

**FOR RETALIATION--31 USC 3730(h) (FALSE CLAIMS ACT)**

**(Against All Defendants)**

As a first, separate and alternative claim for relief, Plaintiff alleges:

29. Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28, inclusive, above.

30. As alleged above, Plaintiff made known to Defendant that he had alerted governmental authorities to conduct he reasonably believed to be fraudulent and in violation of the False Claims Act, and Defendants were aware of Plaintiff's efforts to stop violations of the False Claims Act.

31. Plaintiff is informed and believes and thereon alleges that because

Plaintiff was engaging in activities that are protected under the False Claims Act's anti--retaliation provision, 31 U.S.C. §3730(h), Defendant terminated Plaintiff's employment.

32. As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

33. Plaintiff has incurred and will incur attorney fees and costs in the bringing of this action, and is entitled to recover such fees and costs pursuant to 31 U.S.C. §3730(h)(2). Plaintiff is entitled to all relief necessary to make him whole.

**SECOND COUNT**

**FOR RETALIATION IN VIOLATION OF**

**CALIFORNIA LABOR CODE §6310**

(Against All Defendants)

As a third, separate and alternative claim for relief, Plaintiff alleges:

34. Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33, inclusive, above.

35. At all times during Plaintiff's employment with Defendants, California Labor Code §6310 was in full force and effect and binding on Defendant. This statute makes it unlawful for an employer to retaliate against an employee for making a bona fide oral or written complaint to his or her employer of unsafe working conditions or work practices, in his or her employment or place of employment.

36. On information and belief, Plaintiff alleges that his complaints, as alleged above, regarding safety violations lead to retaliation against him in the terms and conditions of his employment and to his termination.

37. As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

38. Plaintiff is entitled to a $25,000 civil penalty pursuant to Labor Code §§6310 and 6428. Plaintiff intends to exhaust the requirements of Labor Code §2699.3 and will seek leave to amend this Complaint as a matter of right to allege exhaustion of the requirements therein.

39. The conduct of Defendants, and each of them, as alleged above was fraudulent, oppressive and malicious and was undertaken with conscious or reckless disregard of Plaintiff's rights. Such conduct was undertaken by employees, officers and managing agents of all Defendants, and was ratified at the highest levels of Defendants' management. As a result, Plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to deter Defendants and others similarly situated, from such conduct in the future.

40. Plaintiff has incurred and will incur attorney fees and costs in the bringing of this action, and is entitled to recover such fees and costs pursuant to Labor Code §6310 and 2698 et. Seq. Plaintiff is entitled to all relief necessary to make him whole.

## THIRD COUNT

## FOR RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE §1102.5

(Against All Defendants)

As a third, separate and alternative claim for relief, Plaintiff alleges:

41. Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40, inclusive, above.

42. At all times during Plaintiff's employment with Defendants, California Labor Code §1102.5 was in full force and effect and binding on Defendant. Labor Code §1102.5 prohibits an employer from retaliating against an employee for, among other things, disclosing information to a government or law enforcement agency, a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute regardless of whether disclosing the information is part of the employee's job duties.

43. On information and belief, Plaintiff alleges that Defendant terminated Plaintiff's employment in violation of California Labor Code §1102.5 because he disclosed information to both the U.S. Government and his supervisors that he had reasonable cause to believe constituted a violation of federal law and/or because the employer feared he would report other such violations to a government or law enforcement agency, and/or because Plaintiff refused to participate in activity that would result in violations of federal law.

44. As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

45. Plaintiff is entitled to a $10,000 civil penalty pursuant to Labor Code §§1105.5(f). Plaintiff intends to exhaust the requirements of Labor Code §2699.3 and will seek leave to amend this Complaint as a matter of right to allege exhaustion of the requirements therein.

46. The conduct of Defendants, and each of them, as alleged above was

fraudulent, oppressive and malicious and was undertaken with conscious or reckless disregard of Plaintiff's rights. Such conduct was undertaken by employees, officers and managing agents of all Defendants, and was ratified at the highest levels of Defendants' management. As a result, Plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to deter Defendants and others similarly situated, from such conduct in the future.

47. Plaintiff has incurred and will incur attorney fees and costs in the bringing of this action, and is entitled to recover such fees and costs pursuant to Labor Code §§1102.5 and 2698 et. Seq. Plaintiff is entitled to all relief necessary to make him whole.

## FOURTH COUNT FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (FEHA)

**(Against All Defendants and DOES 1-10)**

As a fourth, separate and alternative cause of action, Plaintiff alleges:

48. Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 47, inclusive, above.

49. Defendants' termination of Plaintiff violated the public policies of the United States and the State of California as reflected in, among other statutes, and regulations thereunder, the False Claims Act, 31 U.S.C. 3729 et seq., OSHA Standard 2206, the Maritime Labor Convention, and 46 U.S.C. §10303.

50. As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

51. The conduct of Defendants, and each of them, as alleged above was

fraudulent, oppressive and malicious and was undertaken with conscious or reckless disregard of Plaintiff's rights. Such conduct was undertaken by officers and managing agents of all Defendants, and was ratified at the highest levels of Defendants' management. As a result, Plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to deter Defendants and others similarly situated, from such conduct in the future.

**PRAYER FOR RELIEF**

1. On all Counts, for compensatory damages, including loss of earnings and other economic damages, as well as damages for mental anguish and emotional distress according to proof;

2. On the First Count, for double the amount of back pay pursuant to 31 U.S.C. §3730 (h) (2);

3. On the Second, Third and Fourth Count, for punitive and exemplary damages;

4. On the Second and Third Counts, for civil penalties as alleged above;

5. On the First, Second and Third Counts for attorney fees as permitted by law;

6. On all Claims for prejudgment interest as allowable by law; and,

7. On all Causes of Action, for Plaintiff's costs of suit; and

For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial.

DATED: January 25, 2017

KELLEY•SEMMEL, LLP

By: [signature]

Amy Semmel, Attorneys for
Plaintiff Donald Mark Ryan